# NEW YORK SUPERIOR COURT.

AUGUSTIN DALY agt. FANNY MORANT SMITH and CHAS. SMITH.

*An injunction will lie to restrain an actress from performing at another theater in violation of an existing contract with the complainant.*

The question has been many times elaborately discussed both in England and in this country whether or not a court of equity will interfere by injunction to prevent a breach of a contract for personal services, or whether the complainant must look to his damages at law as his sole redress. On a cursory reading the authorities may seem somewhat conflicting, but a careful perusal of them leaves no doubt of the existence of this power in the court.

There is no reason why contracts for theatrical performances should stand upon a different footing than other contracts involving the exercise of intellectual faculties. Actors and actresses like all other persons should be held to a true and faithful performance of their engagements, and whenever the court has not proper jurisdiction to enforce the whole engagement it should, as in all other cases, operate to bind their consciences at least as far as they can be bound to a true and faithful performance.

On the 11th of February, 1874, a contract in writing was entered into between the plaintiff and the defendant Fanny Morant Smith, by which the latter covenanted and agreed, among other things, to act to the best of her ability, in theatrical performances on the stage of plaintiff's theater, during the seasons of 1874, 1875 and 1876, all such parts and characters as the plaintiff might direct; and that she would not act at any other theater or place in the city of New York from the day of the date of said contract until the determination thereof, without the written consent of the plaintiff. The plaintiff then avers a breach of said contract on her part, by accepting an engagement to play during the ensuing season of the Union Square theater, and allowing her appearance at that place to be publicly advertised.

*Held,* that the plaintiff had made out a case calling strongly for the interposition of the equity powers of this court; but that the defendant Fanny Morant Smith had no defense on the merits. The motion of the plain-

Daly agt. Smith.

tiff for the continuance of the injunction during the pendency of the action granted with ten dollars costs.

*Special Term, September,* 1874.

MOTION for continuance of injunction.

*A. Oakey Hall,* for motion.

*William D. Booth,* opposed.

FREEDMAN, *J.* — This is a motion on the part of the plaintiff for the continuance, during the pendency of the action, of an injunction, heretofore granted, preliminarily restraining the defendant Fanny Morant Smith from performing as an actress upon the stage of the Union Square theater.

The papers on which the motion is based show, among other things, that on the 11th of February, 1874, a contract, in writing, was entered into between the plaintiff and Fanny Morant Smith by which the latter covenanted and agreed, among other things, to act, to the best of her ability, in theatrical performances on the stage of plaintiff's theater, during the seasons of 1874, 1875 and 1876, all such parts and characters as the plaintiff might direct, and that she would not act at any other theater or place in the city of New York from the day of the date of said contract until the determination thereof without the written consent of the plaintiff. The plaintiff then avers a breach of said contract on her part by accepting an engagement to play during the ensuing season of the Union Square theater, and allowing her appearance at that place to be publicly advertised; and after setting forth various alleged equities which, it is claimed on his part, entitle him to an injunction and which will be noticed hereafter, he prays that she may be enjoined from continuing the breach. The sole object of the action, in which her husband has been joined as a party defendant, is to have her thus restrained by the decree of this court; and it is clear, therefore, that unless

Daly agt. Smith.

an action for that purpose alone can be maintained, the court is without jurisdiction to restrain her during the pendency thereof.

The very first question to be considered, therefore, is, whether the action will lie as brought. It is conceded by both sides that the action could not be maintained for the strict performance of the whole contract, if it had been brought in that form, and that in such case there would be no power in the court to compel, either by order or final decree, the defendant to act.

The question whether or not a court of equity will interfere, by injunction, to prevent a breach of a contract for personal services, or whether the complainant must look to his damages at law as his sole redress, has been frequently, and on several occasions quite elaborately, discussed, both in England and in this country. On a cursory reading the authorities may seem somewhat conflicting, but a careful perusal of them, in the light of the facts before the court on the several occasions, can leave no doubt as to the existence of the power.

Some of the cases cited by the learned counsel for the defendant, with the view of showing the non-existence of the power, are cases in which the complainants prayed solely for the specific performance of a contract, whose performance could not be enforced by judicial sentence. In others, in which the complainants prayed for specific performance of the positive part, and, as incidental relief, for prohibition of the violation of the negative part of the contract, it was held that unless the court had the power of enforcing the positive part it would not prohibit the violation of the negative terms. Still others — and herein are included some in which not specific performance but the restraint of the violation of a negative clause was the object — were determined against the complainants for want of equity in the bill. All these are not in point on the question now under consideration.

There are really but two cases, and they arose in England, in which — though in each the decision might more appro-

priately have been placed upon other grounds, and especially on the ground of want of equity — the existence of the power was unqualifiedly denied.

The first is *Kemble* agt. *Kean* (6 *Simons*, 333), in which the complainant sought to compel the specific performance of the unfulfilled part of a contract of a very indefinite character as to time and manner of service, which had been partially completed, but whose completion had been interrupted about eighteen months previous to the filing of the bill by the sickness of the defendant and the amicable arrangement of the parties. In this case vice-chancellor SHADWELL laid down the broad doctrine that, except in cases of partnership, where the agreement is mainly and substantially of an active nature and is so undetermined that it is impossible to have performance of it in a court of equity, and it is only guarded by a negative provision, the court of equity will leave the parties altogether to a court of law, and will not give partial relief by enforcing only the negative stipulation.

The second is *Kimberley* agt. *Jennings* (6 *Simons*, 340), in which the rule laid down in the first case was applied by the same learned judge to a case in which the complainants sought an injunction only against the violation of a covenant not to engage in a business similar to that of the plaintiffs for the term of six years. This covenant was contained in a contract made by the defendant with the complainants to the effect that for the period of time named he would faithfully serve the complainants in the capacities of clerk, traveller and book-keeper.

But in *Dietrichsen* agt. *Cabburn* (2 *Phillips' Ch. R.*, 52) the doctrine of vice-chancellor SHADWELL was repudiated. In this case the action was founded on an agreement in writing whereby the defendant had undertaken for twenty-one years to employ the plaintiff as his wholesale agent for the sale of oil and to supply him with such quantities as he should order at forty per cent discount upon the current retail price, and that he would not, during that period, supply or sell any

of the oil to any other person for the purpose of selling it
again at a larger discount than twenty-five per cent upon
such retail price. In reversing the decision of the vice-chan-
cellor, who had evidently followed vice-chancellor SHADWELL's
doctrines, the lord chancellor said :

" The equitable jurisdiction to restrain by injunction an act
which the defendant, by contract or duty, was bound to abstain
from, cannot be confined to cases in which the court has juris-
·diction over the acts of the plaintiff, for if that were so it
could not interfere to restrain the violation of contracts by
tenants or of duty by agents as in the cases of *Yovatt* agt.
*Winyard* (1 *J. & W.*, 394) and *Green* agt. *Folgham* (1 *Sim.
& H.*, 398), or by an attorney as in *Cholmondeley* agt. *Clinton*
(19 *Ves.*, 261) ; in none of which cases was there anything to
be done by the plaintiff which equity could enforce. Such,
also, are cases of injunctions sought by tenants against their
landlords as *Rankin* agt. *Huskisson* (4 *Sim.*, 13), where there
was a negative agreement, and *Squire* agt. *Campbell* (1 *My.
& Cr.*, 459), where one was attempted to be raised by the
exhibition of a plan. In none of these was there any equity
to be administered against the plaintiffs, and yet the jurisdic-
tion was assumed.   *   *   *

" Similar to these are cases of injunction to protect legal rights
as patents, copyrights, services to mills and others.   *   *   *

" It being clear that the court will interfere to restrain a
departure from the contract of partnership, cases of partner-
ship afford additional instances of the fact that the court is
not confined to cases in which it has jurisdiction over the
whole contract.   *   *   *

" If the bill states a right or title in the plaintiff to the
benefit of the negative agreement of the defendant, or of his
abstaining from the contemplated act, it is not, as I conceive,
material whether the right be at law or under an agreement
which cannot be otherwise brought under the jurisdiction of
a court of equity.   *   *   *   "

In the still later case of *Lumley* agt. *Wagner et al.* (1 *De*

Daly agt. Smith.

*Gex, Macnaughton & Gordon's Ch. R.*, 604) decided in 1852, in which the plaintiff prayed that the defendant Johanna Wagner who had contracted to sing and perform at his theater and not to use her talents at any other, might be restrained from singing or performing at another theater in violation of her contract, the lord chancellor re-examined the jurisdictional question involved at great length, upon both principle and authority, discussing and reviewing many cases, and he concluded by saying that he wished it to be distinctly understood that he entertained no doubt whatever that the point of law had been properly decided in the court below, where the jurisdiction had been assumed and exercised. He also entered into a minute examination of the facts of the case and upheld the injunction on the merits as well as on the point of law raised. In the course of his remarks he expressly overruled *Kemble* agt. *Kean* and *Kimberley* agt. *Jennings*.

The criticism of *Lumley* agt. *Wagner*, in which lord SELBORNE, L. C., indulged, in *Wolverhampton and Walsall Railroad Co.* agt. *London and Northwestern R. R. Co.* (*decided in* 1873, *and reported in* 16 *L. R. Equity Cases*, 433) is not an indication that the existence of the power contended for will ever be questioned by the courts of England hereafter. In that case the complainants sought, by means of an injunction, to indirectly compel the defendants to use a certain railway line as they had agreed. The defendants insisted that, as the bill sought to restrain the breach of a particular clause of an agreement of which, as a whole, the court will not enforce specific performance, and there being no negative stipulation in the agreement capable of being isolated, so as to form a distinct contract, as in *Lumley* agt. *Wagner*, the court could not interfere, but should leave the parties to their remedy at law. It was in reply to this claim, which involved a concession of the existence of the jurisdiction in case of the presence of a negative clause, that lord SELBORNE, assuming that in *Lumley* agt. *Wagner*, the lord chancellor had placed his decision solely upon the presence of the negative clause,

made the remark that in that case the jurisdiction of the court had been enlarged on a highly artificial and·technical ground, and that it was the safer and the better rule to look, in all such cases, to the substance, and not to the form. "If," said he, "the substance of the agreement is such that it would be violated by doing the thing sought to be prevented, then the question will arise whether this is the court to come to for a remedy. If it is, I cannot think that ought to depend on the use of a negative rather than an affirmative form of expression. If, on the other hand, the substance of the thing is such that the remedy ought to be sought elsewhere, then I do not think that the forum ought to be changed by the use of a negative rather than an affirmative." Acting upon the rule thus laid down, and coming to the conclusion that the complainants had a substantial equity, lord SELBORNE assumed jurisdiction, though there was no negative clause, and overruled defendant's demurrer to the complaint.

The same rule was applied in *Montague* agt. *Flockton* (*decided in* 1873, *and reported in* 16 *L. R. Equity Cases,* 189). On a motion on behalf of the plaintiff, the lessee and manager of the Globe theater in London, for an injunction to restrain the defendant from acting, or causing his name to be advertised as about to act, at any place other than the plaintiff's theater, for a period of nine months, for which the defendant had agreed to perform for the plaintiff, but which agreement contained no stipulation not to perform elsewhere, sir R. MALLINS, V. C., looked at the substance and not to the mere form of the agreement, and, construing it to amount to an engagement on the part of the defendant to perform for the plaintiff exclusively during the period named, he granted the injunction as prayed for. Referring to the case of *Lumley* agt. *Wagner,* he said : ".It happened that that contract (*viz.,* in *Lumley* agt. *Wagner*) did contain a negative stipulation, and finding it there, lord ST. LEONARDS relied upon it ; but I am satisfied that if it had not been there he would have come to the same conclusion, and granted the injunction, on

Daly agt. Smith.

the ground that Mdlle. Wagner, having agreed to perform at Mr. Lumley's theater, could not, at the same time, be permitted to perform at Mr. Gye's. But, however that may be, it is comparatively unimportant, because the subsequent authorities have completely settled this point."

The authorities so far considered show conclusively that — in England, at least — the jurisdiction of courts of equity over suits like the one at bar is now too firmly established to be again shaken.

Nor has such jurisdiction been seriously questioned in this state.

In *De Rivafinoli* agt. *Corsetti* (4 *Paige*, 264), the contract was, that the defendant should sing for the complainant in the capacity of primo basso, in any city of the United States, for the term of eight months, from November 1, 1833, for the sum of $1,192, payable in sixteen half-monthly payments, each payment to be made in advance, at the commencement of the half-month for which the same was to be paid, and that he would not sing in any other theater without the permission of the plaintiff; for the performance of which agreement each party bound himself to the other under the penalty of a fine of one-third of the salary of the defendant; which fine was to be paid by the party in default without objection or exception. The bill, which was filed before November 1, 1833, charged the defendant with having made engagements to sing for other parties, in New York and Havana, on days on which, by his agreement, he was bound to render service to the complainant, and that he was about to leave the State in fraud and violation of the rights of the complainant. The bill prayed that the defendant be compelled to perform his part of the contract; that he be restrained from leaving the State; for general relief; and for a *ne exeat*. The chancellor discharged the writ of *ne exeat* granted by the injunction master for the reasons: That from the terms of the agreement, as stated in the bill, it was evident that there could be no breach thereof

Daly agt. Smith.

until the first of ·November following, when the engagement of the defendant was to commence; that, even at that time, the complainant would not be entitled to defendant's services before payment or tender of a half-month's salary in advance; and that, consequently, at the time of the filing of the bill the complainant had no right of action against the defendant, neither at law nor in equity.

In *Hamblin* agt. *Dinneford et· al.* (2 *Edw. Ch.*, 529), the defendant Ingersoll, who, among other things, pleaded infancy, had agreed to perform for the plaintiff, as a comedian, for three years, in the city of New York, or any other city in the United States or Canada, for a small salary, and not to perform otherwise during said term. The vice-chancellor treated the bill as a bill in the nature of one for a specific performance. "It seeks," he says, "by its prayer to compel performance at the theater embraced by· the agreement." He then showed that the court could make no such decree or order; that the only relief it could give would be to restrain the actor from performing elsewhere than at plaintiff's theater, but that this would leave the positive part of the agreement untouched. He finally came to the conclusion that it was a mere matter between the employer and the employed, and that the parties should be left to law. The injunction was dissolved without prejudice to the rights of all parties at law. As the bill contained no averment of irreparable damage or other allegations which would have entitled the plaintiff to equitable relief, the disposition that was made of the case was eminently proper; and, in making it, the vice-chancellor conceded that there may be some special exception to the general rule that matters of personal services are matters for law, and that there are cases where a party is restrained in breaches of covenant.

In *Sanguirico* agt. *Benedetti* (1 *Barb. S. C. R.*, 315), the bill prayed for specific performance, for an injunction, and a *ne exeat*. It averred simply that the defendant was about to make other engagements and was about to leave the State, in

violation of his agreement not to do so. It seems to have been wholly destitute of equity, and the complainant was remitted to his remedy at law, with the intimation that although there may be cases in which a court of equity will decree specific performance of a contract for personal services, his case was not one of that character.

*Fredericks et al.* agt. *Mayor et al.* (13 *How.*, 566), decided in 1857, in this court, was an action to compel the services of an artist in photography, to enjoin him (for such purpose) from serving the defendant Gurney, and for damages. Upon a review of the authorities, Mr. justice HOFFMAN came to the opinion that services which involve the exercise of powers of the mind, which in many cases, as of writers and performers, are purely and largely intellectual, may form a class in which the court will interfere; such services being generally individual and peculiar. But he denied the motion for an injunction upon the ground that, under the peculiar circumstances of the case, the defendant Gurney had acquired an equal right to the services of the artist with the plaintiffs. This decision was affirmed by the general term, for the reasons assigned below, the court expressly declining to pass upon the question of jurisdiction (1 *Bosw.*, 227).

*Butler* agt. *Galletti* (21 *How.*, 465) was determined upon the agreement alone, which was simply an engagement to dance at plaintiff's theater, or where he should prescribe. There were no negative or restrictive clauses. In denying the motion for an injunction, Mr. justice HOFFMAN said : " I am unwilling to hold, and do not think I am bound by the cases to hold, that where there are clear and absolute negative stipulations on the part of a party, upon a subject involving in part the exercise of intellectual qualities, and a special case of the impossibility or great difficulty of measuring damages is presented, that the jurisdiction to forbid the violation of such covenants does not exist. But the present case is far from being one of such character, and falls within the authorities of our own state, in which an injunction has been refused."

Daly agt. Smith.

And in the recent case of *De Pol et al.* agt. *Sohlke et al.* (7 *Rob.*, 280), Mr. justice Jones assumed throughout that the right to issue an injunction to prevent the breach of a covenant to render personal service, on the ground that the performance of the act would produce irreparable damages, could not well be questioned. But he denied the motion for an injunction on the ground that the plaintiffs did not then have, and were not likely to have for some time to come, an establishment in active operation; that therefore no custom could, for the time being, be withdrawn from them; and that consequently no damages were resulting, or could be anticipated to result, for some time to come, from the act which plaintiffs sought to enjoin.

So upon principle can I conceive of no reason why contracts for theatrical performances should stand upon a different footing than other contracts involving the exercise of intellectual faculties; why actors and actresses should, by the law of contracts, be treated as a specially privileged class, or why theatrical managers, who have to rely upon their contracts with performers of attractive talents to carry on the business of their theaters, should, with the large capital necessarily invested in their business, be left completely at the mercy of their performers. On the contrary, I am of the opinion that actors and actresses, like all other persons, should be held to a true and faithful performance of their engagements, and that whenever the court has not proper jurisdiction to enforce the whole engagement, it should, like in all other cases, operate to bind their consciences, at least as far as they can be bound, to a true and faithful performance. As pointed out by judge J. F. Daly, in *Hayes* agt. *Willis* (11 *Abb.* [*N. S.*], 167) — and his remarks upon this point, are entitled to respect, notwithstanding the fact that his decision has been reversed upon another point — the resort to actions at law for damages for a sudden desertion of the performers in the middle of their season will, in most cases, fail to afford adequate compensation; and it is not always that the manager is

deprived of his means of carrying on his business, but that his performers, by carrying their services to other establishments, deprive him of the fruits of his diligence and enterprise, increase the rivalry against him, and cause him irreparable injury. If, therefore, such a manager comes to a court of equity and makes proofs of these facts and circumstances, showing also that the contract upon which he relies is a reasonable one, that he is in no wise to blame for its breach by the defendant, and that he has no adequate remedy at law, upon what principle of justice or of common sense is he to be told that he must, nevertheless, seek his remedy at law, and take the chance of proving his damages by legal evidence before a jury? Of what benefit would even a verdict be to him, in case the defendant is wholly insolvent? Is it not an old and firmly settled principle of equity jurisprudence that, just because there is in such a case no adequate remedy at law, it is the office and the duty of equity to step in to prevent a failure of justice? In the language of lord chancellor St. Leonards: A judge would desert his duty who did not act up to what his predecessors have handed down as the rule for his guidance in the administration of such an equity.

Suffice it, therefore, to say that upon principle, as well as upon authority, I am fully persuaded that this court does possess the power and jurisdiction which has been invoked by the plaintiff. At the same time, I am well aware that there is no branch of equitable jurisdiction which requires more discretion in the exercise of it than the one that has been here considered. It remains, therefore, to be seen whether the plaintiff shall have the benefit of it on the merits of his case.

The plaintiff shows that the defendant Fanny Morant Smith is a distinguished actress, and a great artistic acquisition, both in name and dramatic service, to any theater; that therefore for several seasons past he considered it important to secure her professional services for his theater, and did secure them;

that the last contract for such seasons expired in the month of June last; that before the expiration of that contract — to wit, on the 11th day of February last — the new contract was entered into, under which the present controversy has arisen; that the last named contract covers the seasons of 1874, 1875 and 1876, each season to commence on or about the first of September of each respective year, and to terminate on or about the fifteenth of June of the following year, and that by it Fanny Morant Smith, in consideration of a weekly salary of $130, to be paid to her during the first season, and a like salary of $135, to be paid during the second and third seasons, payment to be made on Monday, at noon, of each week, bound herself to act, to the best of her ability, in the performances to be given during the said seasons, all such parts and characters as the plaintiff might direct, and to conform to and faithfully obey certain rules of plaintiff's theater referred to in, and made part of, said contract, and not to act at any other theater in the city of New York from the date of said contract until the determination thereof without the written consent of the plaintiff. The contract also shows that each week is to include such rehearsals as may be ordered by the plaintiff, without any extra payment therefor. The plaintiff further shows that he made such contract, as the defendant Fanny Morant Smith well understood at the time, because his desire, first, to secure her dramatic service, secondly, her name, and thirdly, to prevent her acting elsewhere in New York without his permission and obtaining eclat for a rival theater; that the latter is always an essential reason with managers and is well understood by every actor and actress as it was understood by the defendant; that relying on said contract he announced her in all the daily papers in the city of New York and widely through the United States as a member of his company for this year's season, to commence August twenty-fifth; that a rehearsal for the performance to be given on that day was ordered for Saturday, the fifteenth of August; that she was notified to attend the same, but that she refused;

Daly agt. Smith.

that he has substantially selected and prepared those plays which are to be presented up to the close of the said season, and in doing so has relied on her services, and has managerially distributed and prepared many parts for her to perform therein; but that in violation of her contract and against plaintiff's express prohibition, she entered into an engagement to play during the ensuing season at the Union Square theater, a rival to plaintiff's theater, and that, with her consent, she is publicly announced to appear there. And, finally, the plaintiff shows that it will be impossible to replace her by any other artist at this date, inasmuch as engagements are made in the spring; that he will therefore be irreparably damaged and injured in his business, not only by her departure, but also by her appearance and performance at the rival establishment, and that a computation of the damage thus resulting to him in loss of receipts and otherwise will be utterly impossible in an action at law.

None of these allegations has been denied, or attempted to be denied, by the defendant Fanny Morant Smith, except the allegation that the plaintiff has selected parts for her, and in respect to that she only avers, generally, that she has no knowledge and does not believe the fact to be as stated by the plaintiff, which cannot be held to amount to a denial, especially as she admits to have been summoned to a rehearsal and to have refused not only to attend, but even to look at the role assigned to her. Nor has the force of any of the said allegations of the plaintiff been weakened by any allegation on her part, unless it be by the allegations that she notified the plaintiff some time after the execution of the contract of her intention and desire to cancel the same, and that she is pecuniarily able to the extent of $20,000 in real estate to respond in any damages he may recover against her at law. Upon the whole case as made by the plaintiff the facts thus averred by her, even if true, are quite unimportant. So when the contract is scrutinized in its entirety, and with due regard to its nature and the situation and the prior dealings

of the parties, nothing can be found in it which could be construed into a hardship upon her. Even the fact that the prohibition runs from the date of the contract, and not from the commencement of the regular season of 1874–1875, is not an unreasonable circumstance in this case, however unreasonable and inequitable it might be in others. It has been conceded by both sides that the defendant Fanny Morant Smith is not only a great actress, but that she is also a shrewd lady of great business capacity and mature age and judgment, and it is therefore safe to assume that, in the light of her past experience with the plaintiff, she made the best bargain for herself that could be got under the circumstances. Nor does she claim that the contract is void on grounds of public policy, as being in restraint of trade. On the contrary, the learned counsel who represents her admits that such is not the fact.

The plaintiff has, therefore, made a case as strong as *Lumley* agt. *Wagner* in all respects, and in some respects even stronger, and he is entitled to his injunction, unless the defendant Fanny Morant Smith establishes an affirmative defense.

As such she alleges, in the first place, that the season of 1873–1874, for which she was also engaged, as already shown, was summarily and unexpectedly closed on the 3d of June, 1874, which was about four weeks earlier than the time specified in the contract for that season; that at such close she had not received a benefit, to which she was entitled and from which she expected to realize at least $500; that she subsequently accepted $150 in lieu thereof, but that she was unable to get any compensation for the said four weeks. As the contract here referred to is not before me, I am unable to say whether her claim for that period is well or ill founded. But at most it is only a claim for a stipulated salary, for which she has not only her action, but an adequate remedy at law, and having failed in her subsequent contract to reserve to herself the option not to perform for the plaintiff as long as there should be arrears under the old contract, she is not in a posi-

Daly agt. Smith.

tion to defeat plaintiff's present equities by such claim.   For being reduced to writing, the contract for the season 1874–1875 must be taken to be the repository and evidence of the final intention and understanding of the parties, which, in the absence of uncertainty or ambiguity, cannot be altered by parol evidence.

For a second defense she alleges, in substance, that under the former contract she was not permitted to appear upon the stage on a sufficient number of occasions during the season; that, when permitted, she was, as a rule, and in violation of promises previously made, cast in parts entirely subordinate to the line of business to which she was entitled; that at the time of the execution of her last contract, namely in February last, she was not aware of plaintiff's real intentions toward her, and that she signed the contract in ignorance of such intentions, but that since that time she was made aware that it was the policy of the plaintiff, in inducing her to enter into said contract, not to produce her, but to prevent her appearance on the stage, and thus to injure her professional standing and reputation.   These charges she makes in general terms.   But as particulars have been omitted, and as in the absence of particulars, and of facts and circumstances tending to establish a motive on the part of the plaintiff for such a course, it is impossible to believe that they have any foundation in fact, it seems safe to assume that they owe their origin to an afterthought, and that that was produced by a desire on her part to find some excuse for breaking her engagement. This theory is borne out by her subsequent conduct.   When, preparatory to the first performance to be given under the new contract, the plaintiff sent his prompter to hand her the part assigned to her, she, upon her own showing, not only refused to receive the roll of paper containing it, but refused even to look at it.   This certainly was not the way to test plaintiff's suspected sincerity.   How then can she be permitted to say — in opposition to the sworn declaration of the plaintiff to the effect that he is and always was ready and willing to perform

all the conditions of the contract on his part, and that up to this time he has relied upon it that she would perform her part, and in opposition to the conceded fact that he called upon her to play at the opening performance — that the plaintiff would not treat her in the future as she ought to be treated? This part of her claim is too preposterous to raise an equity in her behalf. And as for the insufficient consideration of her talents which she alleges to have received during the pre-ceding season, that, it seems to me, if it had any foundation in fact and not in her fancy merely, would be pertinent only so far as to show that in this she had an excellent reason for insisting that the new contract should contain a stipulation sufficient to protect her in that respect for the future. Surely she might have provided by contract for the number of nights and the days of the week or month in which she was to appear without fail, the plays in which to perform, and the characters she wanted to represent. But she either saw fit not to demand these conditions, or she has waived them; and it is herein where her case may be distinguished, upon more than one point, from that of *Fechter* agt. *Montgomery* (33 *Bevan*, 22), upon which she so much relies. In that case the contract, so far as it purported to be such, was highly uncertain, and contained words to the effect that no advantage would be taken of the confidence reposed by the actor in the manager. The question then arose, what that confidence was, and it turned out that the actor, who possessed great ability but mere provincial renown, desirous of acting in Shakspeare's plays before London audiences, had made pecuniary sacrifices to obtain a contract for immediate appearance in such plays, and that that was the real bargain between the parties. It was for these reasons that the master of the rolls held, and very properly held, that the uncertain writing should be construed with regard to the surrounding circumstances, and that, when thus construed, the fact that the manager, in consequence of the unusually long and successful run of another play, kept the actor waiting and idle for about five

months, constituted, though the salary was paid, a breach of the contract on the part of the manager which precluded him from the remedy by injunction. It was the manager who had committed the first breach. But, in the case at bar, no such equity is shown to exist in favor of the defendant, either under the expired or the present contract; and while the proof is positive that there was no breach of the present contract on the part of the plaintiff, there is also a failure of proof to establish a breach under the former, in respect to the question last considered. Of the terms of such former contract the defendant has given no evidence whatever ; and under the present one, which is very carefully drawn, and is wholly free from uncertainty or ambiguity upon this point, all questions relating to the selection of plays and distribution of roles were not only left to the discretion of the manager absolutely, but the defendant Fanny Morant Smith expressly stipulated therein to refuse no part which may be allotted to her, and that, in case of refusal, the penalty should consist in the forfeiture of part of her salary or in her discharge, at the option of the plaintiff.

Upon full consideration of all the questions arising in this case, as presented by the affidavits of the parties, I am entirely satisfied, not only that the plaintiff has made out a case which calls strongly for the interposition of the equity powers of this court, but also that the defendant Fanny Morant Smith has no defense on the merits. This brings me to the last question involved. The parties evidently foresaw that differences might arise between them during the life of the contract, and so careful were they that they provided even for the contingency which has arisen in this case. The contract says, that if the defendant Fanny Morant Smith should refuse to fulfill her part, and should attempt to perform at any other theater before the termination of her agreement with the plaintiff, the plaintiff may, by legal process or otherwise, restrain her from so performing, on payment to her, during such restraint, of a sum equal to one-quarter of the salary to

be paid to her under the contract, in lieu of the said, or any other salary under the agreement during the period covered. I refrained from noticing this clause at an earlier stage because parties cannot confer jurisdiction by stipulation. But as the jurisdiction exists, as I have already shown, wholly irrespective of the clause, it was competent for the parties to agree upon the terms of restraint in a proper case, and as this is a proper case for an injunction, irrespective of said clause, I have no inclination to interfere with the arrangement which the parties saw fit to make. The plaintiff evidently considered that, though in case of disagreement he could not compel the defendant Fanny Morant Smith to act; it was worth about thirty-three dollars a week to him to keep her from constituting an attraction for a rival establishment; and she, having agreed to it, has no cause of complaint, for her restraint is not predicated by the court upon the existence of the clause. By the terms of the contract, restraint and payment are mutually dependent on each other, and the restraint is not to extend beyond the limits of the city of New York, and a contract to this effect is, therefore, presented, which the court can completely and effectually enforce. No previous payment or tender is necessary to the maintenance of the action.

The motion of the plaintiff for the continuance of the injunction during the pendency of the action is therefore granted with ten dollars costs, but on condition that the plaintiff pay to the defendant Fanny Morant Smith during such continuance one-quarter of the salary to which she would be entitled under the contract in case of performance, such payment to be made to her or her order, as she may direct, in weekly installments, payable on Monday of each week; and that he also pay to her or her order forthwith such sum as may have accrued since the granting of the preliminary injunction contained in the order to show cause herein.