HOYT et al. v. FULLER.

*(Superior Court of New York City, Special Term. June 16, 1892.)*

1. THEATRICAL CONTRACT—CONSIDERATION.
   A contract between an actress and the owner of a theater, by which she gives him the exclusive right to her services, with the option in him alone to terminate the contract at any time, is not unconscionable.

2. SAME—INTERPRETATION—RIGHT TO PERFORM AT OTHER THEATERS.
   Defendant, an actress and *danseuse*, performing the "Serpentine Dance," a specialty which she had invented and composed, and which she claimed that she alone could perform, agreed with plaintiff to perform for him during "the run" at his theater, and on the termination of the run to "go on the road," and "for a run in Boston," not exceeding August 1, 1892, the option of terminating the contract being left with plaintiff. *Held*, that the contract, though there was no negative clause in it, gave plaintiff the exclusive right to defendant's services, and she could not, during her leisure time, perform at other theaters.

3. INJUNCTION AGAINST VIOLATION OF CONTRACT.
   An actress and *danseuse*, having an attractive specialty, which she claimed that she alone could perform, entered into a contract with plaintiff, the owner of a theater, giving him the exclusive right to her services for a certain time, but violated the contract by appearing at other theaters during her leisure time. *Held*, that an injunction would lie to prevent such violation of the contract, since plaintiff engaged her as a special feature to induce people to come to witness her performance, who would not otherwise attend his theater, and her appearance at other theaters would result in pecuniary injury to him, which would be incapable of proof.

Action by Charles F. Hoyt and others against Loie Fuller to enjoin defendant from violating a contract. Plaintiffs moved for an injunction *pendente lite*. Motion granted.

*Howe & Hummel,* for plaintiffs. *Lewinson & Falk,* (*A. J. Dittenhoefer,* of counsel,) for defendant.

McADAM, J. The defendant was to render artistic services for the plaintiffs during "the run," which still continues at plaintiffs' theater, and on the termination of "the run" the defendant was to "go on the road," and "for a run in Boston," not exceeding August 1, 1892. These are dramatic terms, but well understood. True, the option of terminating the contract is left with the plaintiffs, but the defendant cannot complain of that after obtaining employment on the strength of that special condition. The plaintiffs do not seek to terminate the contract, but to enforce all of its provisions, which are fair, and consequently not unconscionable. The contract was intended to give the plaintiffs, not the divided, but exclusive, services of the defendant, and where that is apparent a negative clause is unnecessary to secure that result. *Daly* v. *Smith,* 38 N. Y. Super. Ct. Rep. 158; *Duff* v. *Russell,* (Super. N. Y.) 14 N. Y. Supp. 134; *McCaull* v. *Braham,* 16 Fed. Rep. 42, note.

While equity will not interfere to restrain the violation of such contracts, except where the services are special, unique, and extraordinary,—*Lithographing Co.* v. *Crane,* (Sup.) 12 N. Y. Supp. 898,—the present is essentially such a case. The defendant is an actress and *danseuse,* performing what is known as the "Serpentine Dance," which has gained widespread notoriety. She admits that it is unique and original with her. In a bill filed in the United States circuit court by the defendant to enjoin Minnie Renwood Bemis from attempting to imitate the dance, Miss Fuller lays great stress on the fame, profit, and success she has acquired from it, and describes her artistic effort as follows: "The cause of such success, fame, and profit was the originality and extraordinary novel nature of the incidents, scenes, and tableaux of said composition, which consist of a series of fantastic, graceful, unique, harmonious, and highly pleasing dances, each of which portrays or represents different characters, all of which appeal to the sense of the beautiful and æsthetic emotions; that the composition is entirely novel, and unlike any dra-

matic incident, scene, or tableau known to have been theretofore represented on any stage; and that she invented and composed the same." If this graphic description be correct, it is evident that no one can be procured as a substitute for the defendant. She is the original and only artistic serpentine dancer, while her would-be rivals are but poor imitators. The defendant violated her contract with the plaintiffs by appearing at Amberg's Theater in said dance, and claims the privilege of appearing therein at other places, as her time is not wholly occupied at the plaintiffs'. But this is contrary to the spirit and intent of the contract. The plaintiffs evidently considered the defendant a drawing card,—an attractive feature,—and evidently employed her with a view of inducing people to come and witness her performance, who might not otherwise be influenced to visit their theater. If she is permitted to give the same performance elsewhere, it is needless to say that pecuniary injury to the plaintiffs will follow, the exact amount of which is incapable of proof; hence equity will protect them by restraining the wrong. The injunction will be continued until August 1, 1892, unless the plaintiffs sooner elect to terminate the contract, according to the option therein contained.