(38 Misc. Rep. 513.)

### STONE CLEANING & POINTING UNION v. RUSSELL.

(Supreme Court, Special Term, New York County.  July, 1902.)

1. INJUNCTION—AGAINST EMPLOYING OTHERS.

 Injunction will not lie to restrain breach of contract to employ only members of a certain stone cleaners' and pointers' union, the employment not being unique or extraordinary.

Action by the Stone Cleaning & Pointing Union against Isaac S. Russell.  Plaintiff moves for injunction pendente lite.  Denied.

Achille J. Oishei, for the motion.

David Welch, opposed.

GIEGERICH, J.  The defendant, a contractor and builder, entered into an agreement with the plaintiff, a labor union, to employ none but its members in certain lines of work.  The defendant admits the making of such contract, and also its violation on his part, but pleads in extenuation that another union, embracing a greater variety of trades, and allied with a union of still other trades and crafts, acting in opposition and hostility to the plaintiff, demanded of him that he dispense with the services of the members of the plaintiff under penalty of a strike on all of his building operations.  He thereupon explained the situation to the plaintiff's agents, and suspended its members from the prosecution of the work on the single building upon which he had any occasion for the employment of stone cleaning and pointing workmen, replacing them by workmen from the rival union aforesaid.  Still later he discharged the latter workmen, and reinstated those of the plaintiff, and a short time afterward he discontinued work on the building altogether, the order for repairs having been countermanded by reason of the delays and annoyances.  The plaintiff's attorney cites no cases whatever where an injunction has been granted against an employer for the enforcement of a negative covenant not to employ others than the plaintiff, but relies upon a variety of authorities from which he seeks to establish an argument by analogy, being principally cases in which a defendant has been restrained from violating his agreement not to engage in similar business within a specified area, or not to disclose trade secrets, and the like.  In the absence of any authorities directly in point, however, I think the cases most nearly applicable are those in which injunctions have been granted or refused against employés where the question has involved services exclusively, without any added element of trade secrets, good will of business, or the like.  Such injunctions have frequently been granted where the services of the employé are of a unique character, such as could not be rendered by another,—as in Daly v. Smith, 49 How. Prac. 150 (being the case of an actress); Duff v. Russell (Super. N. Y.) 14 N. Y. Supp. 134, 16 N. Y. Supp. 958 (being the case of an actress or singer); and Hoyt v. Fuller (Super. N. Y.) 19 N. Y. Supp. 962 (being the case of an actress or danseuse).  In W. J. Johnston Co. v. Hunt, 66 Hun, 504, 21 N. Y. Supp. 314, however, the court refused to enjoin an advertising agent from entering the employment of a rival

newspaper, it being held that the criterion was whether the services were so unique and extraordinary that they could not be rendered by a substitute; the court saying (page 506, 66 Hun, page 315, 21 N. Y. Supp.):

"It is not, however, in all cases where contracts are made for personal services that a court of equity will intervene, but only in cases where, as stated in Pomeroy's Equity Jurisprudence (volume 3, § 1343), 'a contract stipulates for special, unique, or extraordinary services or acts, or for such services or acts to be rendered or done by a party having special, unique and extraordinary qualifications, as, for example, by an eminent actor, singer, artist, and the like.'"

In Lithographing Co. v. Crane (Sup.) 12 N. Y. Supp. 898, it was said:

"It may sometimes be difficult to say just what is a special, unique, and extraordinary service, or whether the employé possesses special, unique, or extraordinary qualifications. The solution may generally be reached by an inquiry as to whether a substitute for the employé can readily be obtained, and whether such substitute will substantially answer the purpose of the contract,—in other words, whether the individual service specially contracted for is essential to prevent irreparable injury. The foundation of the jurisdiction is the inability of the law to afford adequate redress."

Reasoning from the analogy of the principles laid down in the above cases, it seems quite plain that an injunction should not be allowed in the present instance. The employment in question, so far from being unique and extraordinary, appears to be one of a very uniform and established character. The plaintiff, if it has any cause of action, will have an adequate remedy at law, just as would any other employé wrongfully discharged. It will be possible for it to show the amount of services of the kind specified in the contract rendered to the defendant by others than its members, and which its members might have rendered, and the consequent damages, if any.

Motion denied, with $10 costs.