616

HARRY RIBNER, as Secretary-Treasurer of the Retail Dairy and Grocery Clerk's Union of Greater N. Y. Local 338, an Unincorporated Association, Plaintiff, *v.* RACSO BUTTER & EGG Co., INC., Defendant.

Supreme Court, Kings County, December 20, 1929.

*Goldberg & Solomon [Charles Solomon of counsel], for the plaintiff.*
*George H. Epstein, for the defendant.*

RIEGELMANN, J.   This is an application by the plaintiff, a labor union, known as the Retail Dairy and Grocery Clerks' Union of Greater New York, Local No. 338, for an injunction *pendente lite*, restraining the defendant, its officers, directors, agents, attorneys and employees and any and all persons acting in aid or in conjunction with them or any of them from doing acts injurious to the plaintiff and in violation of the agreement entered into between the plaintiff and the defendant; from employing any person or persons in its place of business other than members in good standing of the plaintiff union; from employing persons by the names of Morris Weinick, Irving Goldstein and one Kassover in defendant's business; from making or continuing any agreement of employment between the defendant and any person not a member of the

plaintiff union; from inducing or persuading members of the plaintiff union to drop their membership; from hindering or harassing in any other way the plaintiff and its members. The defendant is a domestic corporation engaged in the retail dairy, grocery and fruit business in the borough of Brooklyn, city of New York. The plaintiff alleges it is a local union, affiliated with the American Federation of Labor. The action is one founded on contract wherein the plaintiff seeks equitable relief for the enforcement of the contract, because of an alleged breach thereof by the defendant.

The complaint alleges that on or about the 29th day of March, 1929, the plaintiff, acting for and on behalf of its members and pursuant to due authority from them and the defendant Racso Butter & Egg Co., Inc., entered into an agreement in writing, which agreement went into effect upon the date of its execution and was for a period of one year from said date; that said agreement contained conditions, covenants and stipulations covering hours of work, wages and other conditions of employment; that the defendant, its officers, directors and agents accepted the provisions thereof and thereafter operated under the terms of said agreement and applied the provisions thereof in their dealings and their relations with their employees and the plaintiff; that the plaintiff and its members employed by the defendant accepted the terms of the said agreement and entered upon performance thereof, and that the plaintiff has performed all the covenants in said agreement on its part to be performed; that the defendant had in its employ Weinick, Goldstein and Kassover; that on or about the 10th day of September, 1929, the said Weinick, Goldstein and Kassover were duly expelled as members of the plaintiff union by reason of their continuing non-payment of dues, assessments and fines and for other failures to comply with the rules and regulations of the union, and that on or about the 13th day of September, 1929, the defendant was notified by registered mail of the expulsion from membership in the plaintiff union of the said Weinick, Goldstein and Kassover; that the defendant has continued and still does employ the said Weinick, Goldstein and Kassover after having been duly notified of the expulsion of said employees from membership in the plaintiff union and after due demand was made for their discharge from the defendant's employ and for the employment by the defendant of union members in place and stead of the said Weinick, Goldstein and Kassover, as provided for in said agreement; that since the execution of the said agreement the defendant has hired and still does employ as dairy and grocery clerks persons who are not members of the plaintiff union, in violation of said agreement, and that the plaintiff has duly demanded of the defendant that it dis-

charge such non-union members or require them to become members of the union, in accordance with the terms, conditions and covenants of said agreement, but that defendant has failed and refused so to do; that the violation of the agreement between the plaintiff and the defendant has lowered and does continue to lower the prestige of the union in the eyes of its members and employers in the trade, is destructive of the morale of the members of the union and of union discipline, encourages disrespect for and violation of other contracts entered into between the plaintff union and employers in the trade, impairs the general effectiveness of the plaintiff union and its usefulness in behalf of its membership, and menaces the very existence of the plaintiff union; that the plaintiff has no adequate remedy at law.

The pertinent portions of the agreement alleged to have been violated by the defendant corporation are found in sections 1, 17 and 19 thereof which provide as follows:

" Section 1. The firm and each of its individuals, present and future, whether copartnership or corporation, agrees to employ none but members of the union in its store or stores or other establishments that are now conducted or maintained by it or in any new store, stores or establishments that it may open, conduct or maintain at any time during the life of this agreement, and the union agrees to furnish to the said firm out of its membership managers, clerks, both regular and special, upon the request of said firm to the best of its ability."

" Section 17. The firm agrees not to enter into individual agreements of any sort with the individual members of the union or to accept or require any security of any sort from any member of the union."

" Section 19. The firm agrees to discharge from its employ any clerk, manager, ' special clerk ' or clerk immediately upon receiving official notice from the union that such clerk, manager or ' special clerk ' has ceased to be a member of the union, or in any event where the union orders in writing the discharge of any such clerk."

The defendant's answering affidavits do not deny the making of the agreement between itself and the plaintiff union; the employment of Weinick, Goldstein and Kassover; the expulsion of the aforesaid three persons from the union; the notification to the defendant by the plaintiff union of such expulsion; the continued employment thereafter by the defendant of Weinick, Goldstein and Kassover in direct violation of sections 1 and 19 of the said agreement.

Plaintiff contends that under section 1 of the agreement the defendant corporation was unequivocally bound to employ exclu-

sively union men; that under section 17 the defendant is precluded from entering into individual contracts with individual members of the union; and that under section 19 thereof the defendant is explicitly bound to immediately discharge from its employ any clerk, manager or special clerk upon receiving official notice from the union that such clerk, manager or special clerk had ceased to be a member of the union, and an order in writing for such discharge had been given.

The defendant contends that an action by a labor union against an employer to compel the employer to discharge men who have ceased to be affiliated with the union by the act of the union in expelling them for non-payment of dues, or an action wherein a labor union seeks to compel an employer under contract with it to refrain from hiring non-union men and hire only union men cannot be maintained in equity, and that the union should be relegated to an action at law for whatever money damages it might be able to establish for the employer's breach of the contract. In support of its contention defendant cites the case of *Stone Cleaning & Pointing Union* v. *Russell* (38 Misc. 513), decided by Mr. Justice GIEGERICH at Special Term, New York county, in July, 1902. In that case the plaintiff, a labor union, sought an injunction against the defendant, a contractor and builder, to enforce the provisions of an agreement entered into between the plaintiff and the defendant under the terms of which the defendant agreed to employ members of the union in certain lines of work. No cases in point were submitted to the court, and in the absence of such controlling authority the court, reasoning from analogy, denied the application for an injunction on the ground that there was no authority for granting the same, since the services sought to be enjoined were not of a unique and extraordinary character. The pertinent parts of the decision are as follows: " I think the cases most nearly applicable are those in which injunctions have been granted or refused against employees where the question has involved services exclusively, without any added element of trade secrets, good will of business, or the like. Such injunctions have frequently been granted where the services of the employee are of a unique character, such as could not be rendered by another, as in *Daly* v. *Smith* (38 N. Y. Super. Ct. 158; 49 How. Pr. 150, being the case of an actress); *Duff* v. *Russell* (14 N. Y. Supp. 134; affd., 60 N. Y. Super. Ct. 80; 16 N. Y. Supp. 958, being the case of an actress or singer); and *Hoyt* v. *Fuller* (47 N. Y. St. Repr. 504; 19 N. Y. Supp. 962, being the case of an actress or danseuse). * * * Reasoning from the analogy of the principles laid down in the above cases, it seems quite plain that an injunction should not be allowed in the present

instance. The employment in question, so far from being unique and extraordinary, appears to be one of a very uniform and established character. The plaintiff, if it has any cause of action, will have an adequate remedy at law, just as would any other employee wrongfully discharged. It will be possible for it to show the amount of services of the kind specified in the contract rendered to the defendant by others than its members, and which its members might have rendered, and the consequent damages, if any." (*Stone Cleaning & Pointing Union* v. *Russell*, 38 Misc. 515, 516.)

I am of the opinion that the right of a labor union to enforce the terms of a lawful contract such as exists between the parties in the instant case should not be determined by the character of the services to be performed by the members of the union, but should rest upon the mutual rights and obligations of the parties under their contract. It is well settled that an employer may avail himself of the relief afforded by a court of equity to enforce his rights under such a contract with a labor union. Conversely, the union should be afforded reciprocal relief to enforce its rights under the contract with the employer. I find this view sustained by later authority in the cases of *Schlesinger* v. *Quinto* (201 App. Div. 487) and *Goldman* v. *Cohen* (222 id. 631), both of which were decided nearly a quarter of a century after the case of *Stone Cleaning & Pointing Union* v. *Russell* (*supra*). In the *Schlesinger* case, which was an action by a labor union to restrain an association of employers from breaching a contract with reference to wages to be paid to members of the union, etc., the learned court stated: " The cases thus far decided have been at the suit of the employer against combinations of labor, for the simple reason that this is the first time that labor has appealed to the courts. The principles of law on which they were decided are applicable to a combination of employers who by coercive measures seek to break contracts between employer and employee. The remedies are mutual; the law does not have one rule for the employer and another for the employee. In a court of justice they stand on an exact equality; each case to be decided upon the same principles of law impartially applied to the facts of the case, irrespective of the personality of the litigants." In the *Goldman* case plaintiff, a labor union, sought an injunction *pendente lite* restraining the defendant employers from violating a contract by ordering a lockout of the members of the union because of their membership therein and from refusing to employ in accordance with employer's needs such members as were sent by the union. In writing for an unanimous court, Mr. Justice FINCH stated as follows: " The making of the contract being conceded and upon this record the same subsisting in full

force and effect, the plaintiffs are entitled, pending the trial of the action, to injunctive relief for the protection of such of their rights as are threatened and the violation of which will produce irreparable damage. Usually in the past it has been the employer who has sought the help of the courts for the protection of his rights, but obviously the same principles of law apply equally to both employer and labor union." The learned court in both of these cases makes it clear that an employer may be restrained from breaching his contract with the union. The plaintiff in the instant case seeks like relief, namely, that the defendant be restrained from breaching the contract under which the defendant agreed to employ only members of the plaintiff union in good standing for one year from the 29th day of March, 1929. I am of the opinion that equity affords the only adequate remedy in the premises. The injury is irreparable and continuous. To deny to the plaintiff union the right to invoke the aid of a court of equity to prevent an unlawful violation of its contract, it must necessarily follow that the right of collective bargaining will be seriously impaired, leaving the labor union to resort solely to strikes and picketing, which would entail not only serious financial loss, but also protracted and needless friction and possible breaches of the public peace and security.

It is fitting that industrial struggles be settled by modern methods of procedure as now laid down by the courts and as aptly stated in the opinion of the learned court in the *Schlesinger Case (supra)*: " Experience has shown that such industrial struggles lead to lockouts, strikes and acts of violence. In the end one side or the other is compelled to yield through financial exhaustion. Both sides have lost. If the employer is successful, the men return to work embittered. If the employees win, they have inflicted incalculable loss on the employer, and the advantage gained does not offset the loss of wages during the period of the strike. But above all, the employer and employee, instead of co-operating to promote the success of the industry, become permanently divided into hostile groups, each resentful and suspicious of the other. Therefore, when the employee, instead of resorting to force to secure his rights, an archaic method abandoned by civilized men, seeks redress in the tribunal constituted by the government to protect its citizens in their rights and redress their wrongs, it is the duty of the court to stop all individual attempts to take the law into their own hands, and compel both parties to await an orderly judicial determination of the controversy." Legislatures and courts recognize the right of labor unions to enter into lawful contracts on behalf of their members with the employer for the purpose of promoting the welfare of their members, and in furtherance thereof such agreements

should be clothed with legal sanction and afforded the mutual protection of the law. It is in the interest of good government that labor unions and employers should be afforded this reciprocal protection in their lawful contractual undertakings. It is proper and praiseworthy that a union, as in the instant case, having entered into a contract with the employer and feeling aggrieved because of an alleged breach thereof by the employer, should come into a court of equity and there seek the protection of its rights rather than to resort to picketing and strikes to redress its wrongs, with the resultant effect upon the orderly conduct of business and inconvenience to the public. Under the terms of the contract here presented there is mutuality of obligation. There should be mutuality of remedy. The contract is valid. The power of a court of equity to issue an injunction to prevent such alleged violation is well established.

Plaintiff's prayer for an injunction during the pendency of the action restraining the defendant from hiring none but members of the union in its establishment is granted. Settle order on notice.