FRANK MOSES and Another, as Trustees, etc., of BENJAMIN ADRIANCE, Deceased, Appellants, *v.* GUARANTEED MORTGAGE COMPANY OF NEW YORK, Respondent.*

First Department, January 12, 1934.

*Arleigh Pelham* of counsel [*Arthur G. Donnelly* with him on the brief; *Shiland, Hedges & Pelham*, attorneys], for the appellants.

*Raphael H. Weissman*, for the respondent.

GLENNON, J. This action was instituted by plaintiffs to recover the sum of $72,500 pursuant to defendant's guaranty of payment of the principal and interest of mortgages assigned by defendant to plaintiffs. The complaint alleges, in substance, the assignment of the mortgages and the execution and delivery of the guaranty by defendant for a consideration paid by plaintiffs; that the mortgages became due, and plaintiffs made written demand for the payment

* Revd., 264 N. Y. ——.

thereof pursuant to the terms of the guaranty; that at the time of the commencement of the action the eighteen months provided for by the guaranty before defendant's obligation to pay became absolute had expired.

Defendant, in its answer, does not deny any of the allegations of the complaint. It sets up, however, what it has styled as two complete defenses to plaintiffs' cause of action. The first defense is predicated upon a regulation of the Banking Department of the State of New York, the Banking Board of the State of New York, and Joseph A. Broderick, as Superintendent of Banks, acting pursuant to Presidential proclamations, executive orders and interpretations of the Treasury Department of the United States, and also to the power and authority vested in them by the Banking Law of the State of New York. The regulation is alleged to have been issued under circumstances as follows:

On March 6, 1933, and prior thereto, defendant, a domestic corporation, organized under the Banking Law of the State of New York, was engaged in the business of investment in and the purchase of real estate mortgages and mortgage certificates and the sale of such real estate mortgages and mortgage certificates with a guaranty of payment. On March 6, 1933, and for some time prior thereto, there existed in the United States and in the State of New York so acute a disruption of the normal flow of currency and the normal processes of exchange, trade, commerce and industry, that the very financial and economic structure of the United States and of the State of New York was threatened. Because of this circumstance, the Governor of the State of New York, on March 4, 1933, by proclamation, declared a "banking holiday" in the State of New York. On the 6th day of March, 1933, the President of the United States issued a proclamation, under his hand and seal, which recited that a "national emergency" existed, and proclaimed, ordered, directed and declared a banking holiday from March 6, 1933, to March 9, 1933, and provided that the institutions affected were "all Federal Reserve Banks, national banking associations, banks, trust companies, savings banks, building and loan associations, credit unions or other corporations, partnerships, associations or persons engaged in the business of receiving deposits, making loans, discounting business paper or transacting any other form of banking business," and further provided that certain specified business may be done by the institutions affected under regulations prescribed by the Secretary of the Treasury. On March 6, 1933, the Governor of the State of New York, by proclamation, extended the banking holiday to March ninth. On the 7th day of March, 1933, the Secretary of the Treasury issued an inter-

pretation by which defendant and all companies engaged in similar business were included among the institutions affected by the Presidential proclamation. On March 9, 1933, the President of the United States declared that the emergency still existed and continued the banking holiday until further proclamation. On the thirteenth day of March the Secretary of the Treasury issued an interpretation again including defendant and others engaged in similar business within the terms of the proclamation. It was pursuant to these proclamations and interpretations and pursuant to the Banking Law of the State of New York that the regulation, upon which the defense is based, was issued. It reads as follows: " Payments of interest and principal due under guarantees and collateral trust bonds shall be made to the holders of such guarantees and collateral trust bonds only as thus provided: to wit: From such sums of principal and interest as shall have been received from mortgagors to and including the 15th and 30th days of each month upon the respective mortgages securing such guarantees or collateral trust bonds there shall be paid on such semi-monthly dates the interest and principal so collected less the reasonable incidental cost of the collection and disbursement of such monies and reserves for the payment of taxes if necessary for the protection of the interests of the holders of guarantees or collateral trust bonds.

" These provisions with regard to the payment of interest and principal to holders of guarantees and collateral trust bonds shall continue until modified or rescinded by the Superintendent of Banks."

The answer then alleges that the proclamations, interpretations and regulations are still in full force and effect in so far as they affect defendant.

In the second defense all of the allegations of the first defense are reiterated. In addition, however, it is alleged that an emergency existed and still exists in the State of New York, affecting the health, comfort and safety of the People; that the Legislature of the State has upon several occasions declared in its enactments that an emergency exists, and that the Legislature passed an emergency measure known as chapter 41 of the Laws of 1933, which became effective on the 7th day of March, 1933, and provided, in part, as follows:

" § 2. During the period of the emergency as hereinafter defined, the Banking Board existing under the provisions of section ten-a of the Banking Law shall have the power, by a two-thirds vote of all its members, to suspend any provision of the Banking Law in whole or in part. It shall also, in addition to such power and not

in limitation thereof, during such period and with like vote, have power to adopt, rescind, alter and amend rules and regulations inconsistent with and in contravention of any law: (1) To safeguard the interests of depositors and stockholders in corporations and depositors with persons subject to the supervision of the Banking Department; (2) To prescribe and regulate methods of conducting business by such persons or corporations; (3) To prescribe what is for such persons and corporations a safe or unsafe condition for transacting business. In the discretion of the Banking Board such suspension, resolution, rule, or regulation may be published in a manner to be prescribed by it or may be otherwise brought to the attention of the person or corporation affected, in a manner to be prescribed by the Board.

" § 3. Any resolution, rule, or regulation of the Banking Board adopted or made pursuant to the provisions of this act shall supersede any provision of law inconsistent therewith.

" § 4. Any such suspension of law, resolution, rule, or regulation of the Banking Board enacted or adopted pursuant to this act shall become ineffective upon the termination of such emergency; and thereupon all the provisions of law which may have been suspended or superseded pursuant to this act shall become effective.

" § 5. The period of the emergency herein provided for shall be from the date of the taking effect of this act until such date as the Legislature may, by joint resolution, designate to be the termination thereof, or, if the Legislature be not in session, the date so designated by a proclamation of the Governor."

The answer then avers that it was by virtue of the power and authority vested by this statute in the Banking Board of the State of New York that it issued the regulation of March 16, 1933.

Plaintiffs, by motion, attacked both defenses for insufficiency. They also moved for judgment on the pleadings and for summary judgment pursuant to rule 113 of the Rules of Civil Practice. The court below denied the motion. In view of the disposition we are about to make of the questions involved upon this appeal, we deem it unnecessary to consider so much of the application as refers specifically to rule 113.

Plaintiffs attack the constitutionality of chapter 41 of the Laws of 1933 upon two grounds: (1) The statute improperly delegates to the Banking Board legislative functions; and (2) the statute is so indefinite as to time as to impair the rights and obligations of existing contracts. While we realize the stress of circumstances and the conditions which prevailed at the time of the proclamations of the President, of the Governor of this State, of the Treasury Department's interpretations, as well as of the enactment of chapter

41 of the Laws of 1933, still it is our duty to determine whether or not the constitutional rights of these plaintiffs have been violated.

There is embodied in the Constitution of this State the sound principle that the Legislature may not delegate to an administrative board or officer powers which are inherently and exclusively legislative. (*Village of Saratoga Springs* v. *Saratoga Gas, Electric Light & Power Co.*, 191 N. Y. 123.) In this case, by the provisions of chapter 41 of the Laws of 1933, the Banking Board of the State is granted the power to suspend any provision of the Banking Law. It is likewise given authority to " adopt, rescind, alter and amend rules and regulations inconsistent with and in contravention of any law." The power thus conferred, in fact, amounts to authority to make law. The case is not one in which the Legislature has enacted a specific law and has granted to an administrative board or officer the duty of executing the law or of formulating rules and regulations consistent therewith for the purpose of carrying out its purposes and intent. On the contrary, the Legislature had, by chapter 41, merely announced a general policy with regard to the institutions affected, and has granted to the Banking Board the power to make such laws, which in its judgment are necessary during the continuance of the emergency, to carry out that policy. While it is true that only rules and regulations may be formulated by the Board, still the same rules and regulations may suspend any provision of the existing Banking Law and may be inconsistent with and in contravention of any law. This we think is a delegation of legislative authority (*Barto* v. *Himrod*, 8 N. Y. 483). As was aptly stated in *Cincinnati, etc., R. R. Co.* v. *Commissioners* (1 Ohio St. 77, 89): " The true distinction, therefore, is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made." While the Legislature may delegate powers not legislative which it may rightfully exercise itself (*Wayman* v. *Southard*, 10 Wheat. 1), it cannot under the guise of conferring discretion confer authority to make the law. (*Field* v. *Clark*, 143 U. S. 649, 693.) (See, also, *Village of Saratoga Springs* v. *Saratoga Gas, Electric Light & Power Co.*, supra.)

The second point urged by plaintiffs is that the statute is too indefinite as to time. No one would quarrel with the right of the Legislature to suspend the payment of principal on mortgages such as are involved in this case for a definite period of time. Here, however, the law contains the following provision:

" § 5. The period of the emergency herein provided for shall be

from the date of the taking effect of this act until such date as the Legislature may, by joint resolution, designate to be the termination thereof, or if the Legislature be not in session, the date so designated by a proclamation of the Governor."

Under the terms of this provision nobody can tell with any degree of certainty when the joint resolution may be passed, or when the Governor, if the Legislature is not in session, may issue a proclamation declaring the emergency at an end. Thus the existing legal rights of plaintiffs may be totally destroyed, and they would appear to have no definite remedy. The rights and obligations of contracts are thus impaired. (U. S. Const. art. 1, § 10.) It will be noted that in the Mortgage Moratorium Laws the suspension of remedies was for a definite period of time. Here it is indefinite.

In *Sliosberg* v. *New York Life Insurance Co.* (244 N. Y. 482, 497) Judge KELLOGG said: " In our case the statute requires that actions of a certain class be stayed until thirty days after ' the recognition *de jure* of a Government of Russia by the Government of the United States.' In other words, the actions are to be stayed ' until the happening of an event which may never happen,' as said in *Burt* v. *Williams* [24 Ark. 91]. The great weight of authority is to the effect that a State imposing such a stay impairs the obligation of contracts and violates the constitutional limitation."

Defendant attempts to sustain the statute upon the broad ground that, in view of the grave emergency which has been proclaimed to exist in the State and in the nation, it is a proper exercise of police power. We do not doubt that the Legislature may enact a law which will control the situation, but we must hold, for the reasons stated, that the statute in its present form is unconstitutional.

The matter pleaded in the amended answer herein is insufficient in law. The order appealed from should be reversed, with twenty dollars costs and disbursements, and plaintiffs' motion for judgment on the pleadings granted.

FINCH, P. J., MERRELL, TOWNLEY and UNTERMYER, JJ., concur.

Order reversed, with twenty dollars costs and disbursements, and motion for judgment on the pleadings granted.