NICHOLAS L. STOKES and Others, Constituting the Members of the Divisional Code Authority No. 4 for the Retail Solid Fuel Industry, and.Others, Plaintiffs, *v.* NEWTOWN CREEK COAL AND COKE COMPANY, INCORPORATED, Defendant.*

Supreme Court, New York County, September 7, 1934.

*Battle, Levy, Van Tine & Fowler*, for the plaintiffs.

*Miller, Paul & Placer*, for the defendant.

STEUER, J. The action is brought by several individuals constituting the members of the Divisional Code Authority No. 4 for the Retail Solid Fuel Industry and by several corporations who claim to be aggrieved by the defendant's conduct. The complaint alleges that pursuant to the National Industrial Recovery Act a code of fair competition for the retail solid fuel industry became effective February 26, 1934, and that a duly certified copy was filed with the Secretary of State of the State of New York. That pursuant to the provisions of the said act it was determined that

* See, also, 153 Misc. 821.

an emergency existed and. the proper steps were taken to fix the lowest reasonable cost at which coal could be sold which would insure the maintenance of rates at which the purposes of the code could be carried out. It further alleges that defendant sold coal below these rates and is continuing to do so and asks the court to restrain it.

Defendant on the motion for an injunction submits affidavits to show that the members of the Code Authority in fixing the lowest cost were not actuated by a spirit of patriotism but by something which more resembled self interest. It is alleged that the cost fixed left important factors out of consideration, and was promulgated to drive the defendant and dealers similarly situated out of business to the end that that business would accrue to the plaintiffs. Facts are set out to substantiate these claims. Of course the claims and some of the facts are vigorously denied. These disputes of fact are fatal to this application. They cannot be overlooked by the court. It is argued that the facts found by a body such as the Code Authority will not be disturbed by the court. In the ordinary course the findings of such a body on a determination of this character are final, but if the findings are attacked for fraud or arbitrary action of the finders they must meet the assault. It is patent that a serious issue involving the good faith of the plaintiffs' official acts is presented which cannot be determined upon affidavits but can only be resolved upon a hearing in open court.

Defendant's cross-motion to dismiss the complaint is based on the proposition that in fixing the lowest reasonable cost the Code Authority exceeded any powers conferred on them by the National Industrial Recovery Act, and on the constitutionality of chapter 781 of the Laws of 1933 (sometimes known as the New York State Recovery Act). The first point finds weighty support in the decisions of other jurisdictions. (*Wilentz* v. *Crown Laundry Service, Inc.*, 116 N. J. Eq. 40; 172 Atl. 331; *Ohio* v. *Gillett Cleaning Co.*, [Ohio Ct. of Com. Pl.] May 5, 1934, as yet not officially reported.) Both of these decisions find their rationale in the proposition that to find the existence of a grant of such extraordinary power express language must be employed by the Legislature, which is not to be found in the respective acts. It should be clearly understood that the question is not whether the legislative authority has the power to fix minimum prices at which commodities may be sold, but whether the Legislature has in fact fixed such prices or duly delegated to a different body the right to do so. The answer can only be found in the act itself (U. S. Code, tit. 15, chap. 15 [Supp. VII]). The provisions of the act are too familiar to require repetition. But the following observations are pertinent — Codes may be sub-

mitted for approval (§ 703-a) or promulgated by the President (§ 703-d). They shall establish " standards of fair competition " (§ 703-b). Codes must contain conditions that employers will comply with the minimum rate of pay for employees (§ 707-a). Any authority to fix prices must be found in the permission to establish " standards of fair competition." Whether that phrase embraces the right to establish the lowest reasonable cost and regulate in regard to it is of course determined by whether Congress intended it to do so. It must be admitted that the words selected were not happily chosen. While " fair competition " is not a usual expression, its opposite, " unfair competition," has become a word of art. It is definite that that expression does not include price cutting. (*Sears, Roebuck & Co.* v. *Federal Trade Commission*, 258 Fed. 307; Nims Unfair Competition [3d ed.], § 300.) The rule of statutory construction, above referred to, that the Legislature, when changing existing law by the grant of unusual power, is presumed to limit its grant to what is unmistakably conveyed, also militates against the contention that the Code Authority has the power. Lastly the Recovery Act itself (§ 704) provides that if price cutting is found to exist in any industry the President upon taking certain steps provided in the section may license those engaged in that industry and limit the industry to those so licensed. It might appear that this section containing the only direct reference to price cutting provides the only manner in which Congress intended to deal with this problem. For these reasons it is urged that the provision in the code in question for fixing the lowest reasonable cost is a nullity as an unauthorized assumption of power.

Examining these arguments in the reverse order it is seen that section 704 provides for licensing also where wage cutting exists. As pointed out, provision against wage cutting is one of the things which must be in every code. Consequently, licensing is a remedy to be applied when the enforcement of a code becomes otherwise impracticable rather than a means to meet conditions not contemplated by the codes. As to the rule of statutory construction, it is merely a guide to the courts created by the courts themselves. While frequently employed it should be used as the occasion demands and only as one of the factors in determining the meaning of the language adopted by the Legislature. Finally, it appears to be extremely unlikely that Congress had in mind the legal term " unfair competition " when enumerating the contents of the codes. Such a construction would make the act but a puny measure to accomplish the purpose.it proclaims. It would provide an elaborate machinery to deal with practices already amply provided against. This court is of the opinion that Congress intended to grant the

power to establish a lowest reasonable cost and to make regulations as to sales consonant therewith and that the contrary view is " based more largely on a legalistic viewpoint than on the viewpoint of the business community." (See *Utah* v. *Bennion*, [Utah] not yet reported.)

Other points are raised by defendant in regard particularly to the constitutionality of chapter 781 of the Laws of 1933. An examination of the briefs and record in *Sherman* v. *Abeles* (150 Misc. 497; affd., without opinion, 241 App. Div. 676)* shows that each of these points was raised and decided adversely to the defendant. These rulings are followed without discussion.

Motion for injunction denied with leave to plaintiffs to provide in the order for an advanced date for trial. Cross-motion denied. Settle order on notice.