GUSTAVE C. DARWEGER, Plaintiff, v. CHARLES B. STAATS and Others, Defendants.*

Supreme Court, Broome County, November 13, 1934.

* Affd., 243 App. Div. ——. Leave to appeal to Court of Appeals granted, Id. ——.

*Pearis & Resseguie* [*Samuel H. Pearis* of counsel], for the plaintiff.

*Hinman, Straub & Hughes* [*Harold J. Hinman* and *J. Vanderbilt Straub* of counsel], for the defendants.

McNaught, J.   The action is for a permanent injunction against the defendants, members of Divisional Code Authority, Division No. 3, Retail Solid Fuel Industry, to restrain such defendants from interfering with the conduct of plaintiff's business, fixing or attempting to fix the price at which he may sell his product within the State of New York, or instituting proceedings against him for violation of Code provisions.

The plaintiff is a so-called independent equipped coal dealer in the city of Binghamton. His coal is purchased in the city of Binghamton from truckers who purchase and transport the same from the State of Pennsylvania. All of plaintiff's purchases and sales are made within the State of New York. The defendants, as the Divisional Code Authority, pursuant to provisions of the Retail Solid Fuel Industry Code, held hearings in a manner prescribed in the Code, declared an emergency existed under its provisions in the territory where plaintiff transacts his business, and established what are termed floor level prices. Under regulations adopted by the defendants as such Divisional Code Authority,

defendants purported to fix a price for all grades of coal, below which dealers are prohibited from selling their product. The price so fixed is in effect the price charged by so-called old line coal company dealers and in excess of the price at which the plaintiff has sold, and asserts he can with profit sell, coal at his equipped yard.

The Divisional Code Authority selected under the provisions of the Retail Solid Fuel Industry Code by the method adopted was composed and controlled by old line coal company dealers, competitors in business of plaintiff.

Manifestly, the enforcement of the order of the defendants will prevent plaintiff from conducting his business in competition with old line dealers. In effect it means the destruction of the business of plaintiff. The order prohibits plaintiff selling his own merchandise at a price fixed by him and satisfactory to him. The proceedings by the Divisional Code Authority before promulgating its order No. 3-E, which fixed the floor level prices in Southern Tier trade areas, the reasons which it is claimed justified such order, and the authority for the acts of the defendants, have been discussed at some length. We do not consider it necessary to determine whether the acts were justified or were unreasonable. The motions before the court must be determined upon other grounds.

The questions presented by these motions involve a consideration of the National Industrial Recovery Act (U. S. Code, tit. 15, § 702 *et seq.*) and chapter 781 of the Laws of 1933 of the State of New York, commonly called the Schackno Act or the State Recovery Act. Widespread industrial depression and economic distress have created conditions in which remedies or nostrums foreign to our preconceived ideas of government have been adopted in a violent and unrestrained effort to obtain relief. With the laudable purpose sought to be attained all citizens are and should be in accord. Legislative declarations of emergency are relied upon to justify startling innovations and sustain unusual changes in our constitutional system of government. Whether such enactments, if they are sustained by the judicial branch of the government, will lead to the promised land of prosperity and plenty, or in a morass that will engulf all of our institutions, only time and experience will determine.

It is not for the courts to pass upon and determine the wisdom of legislative enactments; that power is vested in, and that responsibility belongs to, the legislative branch of the government. Whether the enactment be wise or unwise, reasonable or unreasonable, just or unjust, is not for the court to determine. If the enactment is, under constitutional authority, within the power of the legislative branch, it must be sustained.

No authoritative determination as to the power of the Congress to thus change the form of American institutions has yet been pronounced. Scattered decisions may be collated in which fervent and vehement approval alternates with judicial criticism, but no polar star guides to a definite conclusion.

The legislative power of the Congress has been abdicated more fully than in any previous enactments. Penal responsibility has been imposed for violation of the directions and regulations of administrative authority to an extent never before imposed. If such abdication of legislative power is within the authority of the Congress, then a co-ordinate branch of the Federal government created by the Constitution may voluntarily destroy itself and disrupt the American system of government. If such grant was merely to create administrative rules and regulations to effect and carry out the provisions and declared purposes of the enactments, many authorities sustain such provisions. If, however, a grant not merely to create administrative rules and regulations, but to enact and adopt legislation carrying criminal penalties, is constitutional, it must necessarily follow the power may logically be carried to the adoption of an act by the Congress to the effect that the President be empowered to adopt such rules and regulations as he may deem in the interest of the general welfare. The destruction will then be complete. Representative government will have ceased to exist. Benevolent despotism will be substituted in its place.

There has been a constant evolution of the doctrine that the declaration of emergency by legislative fiat justifies disregard, because of exceptional circumstances and the necessity of promoting the general welfare, of fundamental principles expressed in the Constitutions of Nation and State. While the limit of governmental power, as restricted by the Constitution, should not be transcended, the rule of construction was enunciated in the early days of the republic in the following language, viz.: " But * * * the sound construction of the Constitution must allow to the national legislature that discretion, with respect to the means by which the powers it confers are to be carried into execution, which will enable that body to perform the high duties assigned to it, in the manner most beneficial to the people    Let the end be legitimate, let it be within the scope of the Constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consistent with the letter and the spirit of the Constitution, are constitutional." (*McCulloch* v. *Maryland*, 17 U. S. 316, 421.)

It is to be remembered, however, that the supreme judicial authority in the nation, in days fraught with national peril, when con-

tinued existence of the Union was at stake, when unrest and emergency existed greater than today, uttered a solemn warning in words which cannot be misunderstood: "The Constitution of the United States is a law for rulers and people, equally in war and in peace, and covers with the shield of its protection all classes of men, at all times, and under all circumstances. No doctrine, involving more pernicious consequences, was ever invented by the wit of man than that any of its provisions can be suspended during any of the great exigencies of government. Such a doctrine leads directly to anarchy or despotism." (*Ex parte Milligan*, 4 Wall. 2, 120, 121.)

"Our form of government may remain notwithstanding legislation or decision, but, as long ago observed, it is with governments as with religions, the form may survive the substance of the faith." (FULLER, Ch. J., dis. op. *Lottery Case* (*Champion* v. *Ames*), 188 U. S. 321, 375.)

The plaintiff here is not engaged in interstate commerce. His business is a purely intrastate business. All of his purchases are made and all of his sales are made within the State of New York. While the questions presented by the National Industrial Recovery Act are of the gravest importance; while they involve questions which may determine the continued existence, or the destruction of our constitutional system of government, it is not for this court to determine such questions upon these motions. The National Industry Recovery Act of itself does not and cannot control the manner in which plaintiff shall conduct his business, or fix the price at which he shall sell his product while engaged in purely intrastate transactions. It has not yet been held under the Constitution that the Congress has control of purely intrastate commerce.

It is claimed, however, that the plaintiff is bound by the Code adopted by the National Recovery Administration under the National Industrial Recovery Act relative to his business, because of the provisions of the so-called Schackno Act (Laws of 1933, chap. 781). This contention necessitates an examination of such enactment.

The Schackno Act, section 1, declares the existence of a national emergency, using the identical language of the National Industrial Recovery Act, then inserts similar declarations that the emergency likewise exists in this State, and affects the welfare and undermines the standard of living of the people of the State of New York, and declares that the emergency, the causes and effects thereof, as declared in the national act, relate as well to commerce wholly intrastate in character as to interstate and foreign commerce. It then provides that it is declared to be the policy of the State to

co-operate in the furtherance of the objects and purposes declared in the national act, and to make uniform the standards of fair competition prevailing in intrastate commerce and industry with those of interstate commerce, as required by the provisions of the National Industrial Recovery Act.

Section 2 authorizes the filing of certified copies of codes in the office of the Secretary of State, and provides: " Upon such filing of a copy so certified of a code of fair competition for any trade, industry or subdivision thereof, as approved by the president of the United States, or of any agreement or license or of any rule or regulation provided for under title one of the said national industrial recovery act, such code, agreement, license, rule or regulation shall be the standard of fair competition for such trade or industry or subdivision thereof in the state as to transactions intrastate in character, and *any violation of any provision of such code, agreement, license, rule or regulation shall be a misdemeanor, and upon conviction thereof, the person convicted shall be fined not more than five hundred dollars for each offense,* and for each day such violation continues a separate offense subject to the fine herein prescribed shall be deemed to have been committed."    (Italics ours.)

Section 3 invests the Supreme Court of the State of New York with jurisdiction to prevent and restrain violations of any codes filed pursuant to the act.

Section 5 suspended the operation of the State anti-trust laws during the time the act was in effect.

The act became effective August 26, 1933.    February 14, 1934, the Code of Fair Competition for the Retail Solid Fuel Industry was approved by the President of the United States.    February 24, 1934, a certified copy of such Code was filed with the Secretary of State.    June 29, 1934, order No. 3-E, fixing floor level prices for Broome county and other counties in the Southern Tier trade area, was promulgated by the defendants as the Divisional Code Authority, acting under the National Industrial Recovery Act.

It is urged that this act merely declares the policy of the State to co-operate and provides the means by which the declared legislative intent is to be carried into effect.

Undoubtedly the general rule laid down and uniformly followed is, that a statute may validly provide that the object or the standard of the statute may be attained through a form of procedure or administration found in or pursuant to some other enactment. (*People ex rel. Commissioners* v. *Banks*, 67 N. Y. 568; *People ex rel. Everson* v. *Lorillard*, 135 id. 285; *Watkinson* v. *Hotel Pennsylvania*, 195 App. Div. 624; affd., 231 N. Y. 562.)    The fact that the operation of a statute in particular instances is dependent upon or affected

by a future contingency in no way affects its validity. (*People* v. *Long Island Railroad Co.*, 134 N. Y. 506; *Stanton* v. *Board of Supervisors*, 191 id. 428; *People ex rel. Unger* v. *Kennedy*, 207 id. 533.) "Mere novelty is no objection to legislation." (*People ex rel. Durham R. Corp.* v. *La Fetra*, 230 N. Y. 429; *People* v. *Nebbia*, 262 id. 259, 271.)

The Schackno Act does more than merely declare a policy and provide means to carry it into effect. The National Industrial Recovery Act is not adopted, but it is declared to be the policy of the State of New York to conform in intrastate commerce and transactions with its purpose and administration. Codes adopted under the National Industrial Recovery Act are made, though not in existence, by reference those of the State of New York. The act adopts, not a law of the Congress, but a body of rules and regulations prepared by individuals, approved by an administrative authority and finally approved by the President, and then provides that, upon filing a certified copy in the office of the Secretary of State, a violation of any provision of such Code, so adopted and filed, is a crime under the laws of the State of New York. To term such a method of legislation, such a manner of attempting to create criminal offenses, vicious is to indulge in mild criticism. To hold such a legislative act constitutional seems contrary to the plain language and import of our fundamental laws, both National and State.

The Constitution of the State of New York provides (Art. 3, § 1): "The legislative power of this State shall be vested in the Senate and Assembly;" and by section 17 provides: "No act shall be passed which shall provide that any existing law, or any part thereof, shall be made or deemed a part of said act, or which shall enact that any existing law, or part thereof, shall be applicable, except by inserting it in such act."

The vast increase in public business, the justifiable or unjustifiable invasion of business affairs through government intervention and the complexities of modern civilization are indicative of the fact that public business cannot be transacted today without some delegation of power to administrative officers or bodies. When the legislative act prescribes a method and declares a policy there has been a continuous advance in the granting to administrative bodies and executive officials power and authority to adopt rules and prescribe methods for carrying such enactments into effect. The Schackno Act, however, does not vest in any State authority power to enact rules and regulations or exercise legislative power. It does not provide a criminal penalty for the violation of the act itself, but prescribes a criminal penalty for "*any violation of any provision of such code, agreement, license, rule or regulation.*" It

thus creates a crime for the violation of something which did not exist when the act was adopted, of the terms, conditions or provisions of which the Legislature could have had no knowledge or information, and of a body of rules and regulations to be prepared by some individuals unknown, adopted by a Federal administrative body, and approved by the Chief Executive of the United States.

The legislative power is vested in the Senate and Assembly. The nation is still an " indivisible union of indestructible states." The State within its boundaries is sovereign. The laws that govern its citizens in purely intrastate matters within its borders and the acts which will convert its citizens into criminals must be those specified by the State and its authority.

The Legislature cannot delegate the sovereign powers of the State to an administrative or executive authority of a foreign jurisdiction. It cannot surrender the sovereignty of the State to declare the acts constituting a crime to Federal executive or administrative authority.

" The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." (U. S. Const. art. 10, 10th Amendt.)

It seems to us, without attempting to enter into any extended analysis or discussion, that such a statute is violative of the provisions of the Constitution of the State of New York above referred to, as well as contrary to every principle upon which our republican institutions are based.

While the issues in this case are not identical, we agree with the reasoning and conclusions expressed in *Cline* v. *Consumers Co-operative Gas & Oil Co.* (152 Misc. 653), in which the question of the constitutionality of the Schackno Act is clearly and learnedly discussed. Our conclusion is likewise sustained in *People* v. *Grant* (242 App. Div. 310). The language there used applies with equal force to the Schackno Act, " While the Legislature may delegate the power to make rules and regulations and give them the force of law, it may not delegate the power to create crimes and prescribe the penalties therefor." Under the Schackno Act the Legislature has attempted to delegate the power to make rules and regulations and give them the force of law to Federal authority and granted to that authority the right to specify and create crimes n the State of New York. " The legislative discretion to declare a crime has been attempted to be delegated to the board. This is not only the delegation of an administrative act, but also the delegation of the substantive power to determine a crime." (*People* v. *Grant, supra.*) We can see no distinction except that in the Schackno Act the power

to declare what acts shall constitute the crime is attempted to be delegated by the Legislature to Federal administrative authority instead of State administrative authority. Clearly under such conditions the attempt is in violation of the Constitution of the State.

Many interesting and vitally important questions are involved in the welter of confusion caused by these unusual and strange emanations of the legislative branches of government, National and State. We are yet without authoritative guidance from the Supreme Court of the United States as to those of National origin, or from our Court of Appeals as to those of State origin.

Numerous decisions of courts of original jurisdiction may be cited which apparently sustain the enactments in general. Equally cogent authorities may be found to the contrary.

The power of the legislative authority of a State to in effect impair the obligation of a contract despite the constitutional prohibition, when exigency exists and economic interests justify, has been sustained. (*Home Building & Loan Assn.* v. *Blaisdell,* 290 U. S. 398.)

The authority of the Legislature of a State to empower an administrative board to govern and regulate distribution and fix prices of milk and milk products has been upheld. (*Nebbia* v. *New York,* 291 U. S. 502, affg. *People* v. *Nebbia,* 262 N. Y. 259.)

The *Blaisdell* and *Nebbia* cases did not involve the question before us on these motions.

We are not unmindful that our views may be construed as contrary to those expressed in some recent decisions in this State. It will be noted, however, upon an examination, that several of the authorities did not involve the question here determined.

In a controversy between rival unions of moving picture projectionists, the National Industrial Recovery Act was sustained with fervid judicial eloquence. The jurisdiction of the Supreme Court of New York to restrain violations under the Schackno Act was held authorized by section 3 of such act. Constitutionality was not discussed. (*Sherman* v. *Abeles,* 150 Misc. 497; affd., without opinion, 241 App. Div. 676.) *

The Appellate Division in the Second Department reversed an order denying a temporary injunction and granted the motion for such injunction, on the ground that the acts of the defendant were violative of law and of the provisions of the Code of Fair Competition for the Retail Jewelry Trade, as the defendant was, in fact, selling jewelry at retail under the guise of an auction sale. The court, however, in no manner discussed or passed upon the constitutionality of the Schackno Act. (*Gross* v. *Jamaica Auction Galleries, Inc.,* 242 App. Div. 658.)

* Revd., 265 N. Y. 383.

In *People* v. *Harris* (153 Misc. 390) the relator had been convicted of a violation of the Schackno Act and applied for a writ of habeas corpus, alleging he was illegally detained under a sentence of three months, the court having imposed a fine of $500 or three months in a city prison. The writ of habeas corpus was dismissed and the relator remanded, without any discussion, or apparently any question being raised concerning the validity of the act.

In *Stokes* v. *Newtown Creek Coal & Coke Co.*, MILLER, J., in the First Department (153 Misc. 821) held that the National Industrial Recovery Act and the State Act were constitutional, citing *Sherman* v. *Abeles* (*supra*) and *People* v. *Nebbia* (*supra*). (See, also, *Stokes* v. *Newtown Creek Coal & Coke Co.*, STEUER, J., 153 Misc. 352.)

On October 5, 1934, the United States District Court for the Southern District of New York, in *Spielman Motor Sales Co., Inc.*, v. *Dodge*,* in an action brought to restrain defendant from instituting proceedings against the plaintiff to enforce the Retail Automobile Code, an application for a temporary injunction having been made, a statutory Federal court convened pursuant to section 380 of the United States Code, held the National Industrial Recovery Act was constitutional, and then proceeded in a brief discussion to hold the Schackno Act of the State of New York was not violative of section 17 of article 3 of the State Constitution.

While the decision in *Spielman Motor Sales Co., Inc.*, v. *Dodge* (*supra*), in so far as it passes upon the constitutionality of the Schackno Act under the Constitution of the State of New York, is entitled to weight as the determination of a high judicial tribunal, it is not conclusive in this instance. The construction of State statutes and their validity under State Constitutions are questions of local law, determinable by the courts of the State, final authority resting with the court of last resort in the State. Such decisions on State constitutional questions are controlling upon courts of Federal jurisdiction. (*Price* v. *Illinois*, 238 U. S. 446, 451; *Des Moines Nat. Bank* v. *Fairweather*, 263 id. 103, 105; *Michigan* v. *Michigan Trust Co.*, 286 id. 334; *Sterling* v. *Constantin*, 287 id. 378; *Glenn* v. *Field Packing Co.*, 290 id. 177; *Lee* v. *Bickell*, 292 id. 415.)

With full respect for the decisions referred to, we do not regard them as binding or conclusive upon this court on these motions.

In times of stress and emergency, the general welfare and interests of the People as a whole must be paramount to the letter of the law. Emergency, however, does not justify destruction. The constitutionality of the National Industrial Recovery Act is not for us to determine, but must be determined by courts of Federal jurisdiction. The Schackno Act is before us and its constitutionality must be determined upon this motion.

---

* 8 F. Supp. 437.

We do not concur in the view that relief must be denied plaintiff because he fails to show he will suffer irreparable damage if the relief is not granted. The facts set forth in the moving papers disclose that enforcement of order No. 3-E as to plaintiff will, to all intents and purposes, annihilate his business. We conceive such a result might well cause plaintiff irreparable damage.

It is urged that plaintiff has an adequate remedy at law because by the specific provisions of the Code he had a right to complain and ask for the review of any provision of the Code or of any order of the Divisional Code Authority. We are told, however, in the learned brief submitted by counsel for defendants that " The Code of Fair Competition * * * is merely the procedural and administrative formula designed to carry into effect the legislative standard of ' fair competition,' required to be ' uniform ' in each field of authority, as set by the National Industrial Recovery Act and the New York Act." Under such circumstances we are unable to conclude plaintiff has an adequate remedy at law. The argument is plausible but not convincing.

We hold that subdivision 1 of section 2 of chapter 781 of the Laws of 1933 is in violation of the Constitution of the State of New York, article 3, sections 1, 17, and void; that it is an unwarranted attempt to delegate the power to create a crime; that the declaration of the acts constituting a crime rests with the Legislature and cannot be delegated to Federal administrative or executive authority.

We hold that the plaintiff has established sufficient reasons to justify the granting of an injunction *pendente lite* against the defendants.

We hold the objection that plaintiff's complaint upon its face fails to state facts sufficient to constitute a cause of action, cannot be sustained.

The motion of plaintiff for a temporary injunction is granted. The motion of defendants to dismiss the complaint is denied. Submit orders accordingly.