HARRY SHERMAN, as President of the MOVING PICTURE MACHINE OPERATORS UNION, LOCAL 306 OF INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES AND MOVING PICTURE OPERATORS OF THE UNITED STATES AND CANADA, et al., Respondents, *v.* ARTHUR ABELES et al., Defendants, and INDEPENDENT THEATRE OWNERS ASSOCIATION, INC., et al., Appellants.

(Argued April 17, 1934; decided November 20, 1934.)

*Milton C. Weisman* and *Melvin A. Albert* for appellants.

*Charles H. Tuttle, Copal Mintz* and *Samuel M. Birnbaum* for respondents.

CROUCH, J.   This action is brought by (1) a union of moving picture machine operators in New York city (hereinafter called Local 306), and (2) by an individual member thereof against (1) Independent Theatre Owners Association, Inc. (hereinafter called Owners Association), (2) the several theatre owners (hereinafter called exhibitors) who are members of owners association; and (3) Allied Motion Picture Producers Union (hereinafter called Allied) with which the owners association is said to have entered into a ten-year contract for the employment of its members as operators to the exclusion of the members of Local 306.   The complaint alleges a conspiracy on the part of the exhibitors to boycott Local 306, to discharge its members and refuse to re-employ them, to abrogate collective bargaining with operators, to reduce the number employed and the wages paid to them, to increase their hours of work, to thwart any effective labor organization

by the operators, to foment dissension among them, to involve them in costly litigation, and generally to discredit and destroy Local 306, and to induce other exhibitors to do likewise.

It is alleged that on May 4, 1933, the said exhibitors organized and became members of the owners association, pursuant to and for the purpose of achieving the objects of the conspiracy. The enactment of the National Industrial Recovery Act on June 16, 1933 ([48 Stat. 195] hereinafter called the Recovery Act), the promulgation of the President's Re-employment Agreement on July 27, 1933 (hereinafter called PRA), the enactment on August 26, 1933, of the New York State law (Laws of 1933, ch. 781, hereinafter called the State law), are then set forth; and it is alleged that the defendant exhibitors signed and delivered agreements pursuant to the PRA, publicly professed their accord with the policies therein set forth, and exhibited to the public the insignia of the Blue Eagle. Thereupon, the complaint alleges a concerted commission by defendants of various acts illegal under the provisions of section 7(a) of the Recovery Act, which provisions were incorporated both in the PRA and in the Code subsequently formulated. It is alleged that the owners association and the exhibitors organized Allied, a company-controlled company union, with which it then entered into a ten-year agreement, providing, among other things, that motion picture booths should be manned by fewer operators than had been previously required, and that said operators should work longer hours and receive less compensation. It is alleged further that the exhibitors between certain dates discharged and otherwise discriminated against various members of Local 306 because of their membership therein; that they required membership in Allied as a condition of employment or of continuance in employment, and that they otherwise breached the law — all to the damage of Local 306 and of each and every member thereof. In short, the complaint

alleges a conspiracy to wrong the plaintiffs, carried into effect by means of illegal acts which are injurious not only to the public but directly to plaintiffs. An injunction is demanded restraining all such illegal acts and requiring defendants to re-employ those who were discharged upon the terms which prevailed at the time of the discharge, or upon such other terms and conditions as may be prescribed under the Recovery Act by any code or agreement thereafter entered into pursuant to such act.

Simultaneously with the commencement of the action, the plaintiffs moved for a temporary injunction. The motion was heard on affidavits, and the Special Term granted an order which restrained the defendants from doing various acts illegal under each of the three subdivisions of section 7(a) of the Recovery Act, as incorporated and elaborated in the Code for the Motion Picture Industry. The order was unanimously affirmed by the Appellate Division which granted leave to appeal to this court and certified for answer certain questions of law.

The essential and controlling question certified is this: " 2. Was the injunction *pendente lite* properly granted? " In answering that question we are limited to a consideration of the facts as they were found at Special Term and unanimously affirmed on appeal. While the Code for the Motion Picture Industry was not approved by the President until November 27, 1933, four days after the complaint herein was verified, it was in effect when the hearing on the motion was had. It was properly before the court since it was an instrumentality contemplated by the Recovery Act, and defined the rights of the parties under the act at that time. In the absence of a formal decision, resort may be had to the opinion at Special Term for the findings of fact and refusals to find. It was found that there had been violations of the Recovery Act, of the PRA and of the Code as to wages, hours of employment and increase of duties of employees so as to

decrease the number of such employees. It was further found that Allied was a company-controlled company union; but there was a refusal to find that any one seeking employment from exhibitors had been required " as a condition of employment " to join Allied or " to refrain from joining, organizing or assisting a labor organization of his own choosing." There was also a refusal to find " the charges of conspiracy and the discharge of Local 306 projectionists by association members in violation of existing contracts." The matters so refused were left to be settled upon common-law evidence at the trial.

1. Neither the complaint nor the evidence is concerned with any specific matter relating to the right of the plaintiffs to bargain collectively. Many of the exhibitors had entered into contract with Local 306 for the year expiring August 31, 1933. The contract is not in evidence. Under it, however, the exhibitors were apparently bound to employ members of that union during the existence of the contract. They did so; or at least the court has refused to find that there was any breach. With the expiration on August 31, 1933, of the contract with Local 306, its members were discharged and their places were taken by members of Allied. There was no dispute between the exhibitors and Local 306 about hours, wages or conditions of employment. Those matters were fixed by the terms of the contract until its expiration, and thereafter by all the implications of the Recovery Act and the PRA. For reasons which seemed good to them, the exhibitors simply refused to hire members of Local 306. Unless prevented by some valid law or by an existing contract, employers may discharge and hire employees at will. Until the enactment of the Recovery Act, there was no doubt at all that employers might discriminate against union men or against members of any particular union. (*Adair* v. *United States*, 208 U. S. 161; *Coppage* v. *Kansas*, 236 U. S. 1; *People* v. *Marcus*, 185 N. Y. 257; *Interborough Rapid Transit Co.* v. *Lavin*,

247 N. Y. 65, 74, 77; *Opinion of Justices*, [N. H. 1933] 166 Atl. Rep. 640; *Opinion of Justices*, 275 Mass. 580.) Here the exhibitors were free from contract obligations, and the only statutory obstacles to complete freedom of contract were the provisions of section 7(a) of the Recovery Act. That subdivision 1 was not aimed at the immemorial right to hire and discharge at will but at something quite different, is shown by the opinion of the Supreme Court of the United States in *Texas & N. O. R. R. Co.* v. *Brotherhood of Ry. & S. S. Clerks* (281 U. S. 548, 556, 570). The provisions of the statute there under consideration were, in substance, the same as those of subdivision 1 of section 7(a). The chief justice said: " The petitioners invoke the principle declared in *Adair* v. *United States*, 208 U. S. 161, and *Coppage* v. *Kansas*, 236 U. S. 1, but these decisions are inapplicable. The Railway Labor Act of 1926 does not interfere with the normal exercise of the right of the carrier to select its employees or to discharge them. The statute is not aimed at this right of the employers but at the interference with the right of employees to have representatives of their own choosing."

So far as the plaintiffs here are concerned, that right is in no way involved. The organization and existence of Allied as a company-controlled company union may have various legal consequences apart from this case; but the only relevancy of that fact here is in connection with the alleged violation of subdivision 2. That part of the injunction order relating to acts illegal under section 7(a) subdivision 1, is, therefore, without support.

2. Since the proof was held insufficient to show that any one seeking employment from the defendant exhibitors had been required " as a condition of employment " to join Allied or " refrain from joining, organizing or assisting a labor organization of his own choosing," that part of the injunction order relating to illegal acts under section 7(a), subdivision 2, is likewise without support.

3. Apart from the organization of Allied as a company-

controlled company union, the only acts shown to be illegal under the Recovery Act and Code are broadly those relating to the matters covered by section 7(a) subdivision 3, that is, wages, hours of employment and increase of duties so as to decrease the number of employees. None of those acts, however illegal they may be, affects either of the plaintiffs otherwise than remotely. From the nature of the complaint made, we assume that none of the members of Local 306 is an employee of defendants. Local 306 occupies the status of an " outside union." We have said that such a union " may be as interested in the wages of those not members, or in the conditions under which they work as in its own members because of the influence of the one upon the other." (*Exchange Bakery & Restaurant, Inc.*, v. *Rifkin*, 245 N. Y. 260, 263.) But in that case and in the case of *Stillwell Theatre, Inc.*, v. *Kaplan* (259 N. Y. 405) we were dealing with a privilege and an immunity, arising out of social and industrial conditions, granted by law to such a union. The conduct of the unions in those cases was held to be justifiable nd not tortious. The implication of malice was rebutted by the existence of the privilege. It does not follow that such a union has an affirmative right of action, under the Recovery Act or the State Law, solely because of its economic and social interests. Nor do we think the word " interests " as used in section 3 of the State law was intended to have so broad a meaning. If it were otherwise, there is a possibility that organized labor might find its hard won extra-judicial remedies of strike, boycott and picketing imperilled.

The case, then, upon the facts, comes down to this: Public wrong may have been done by the defendants. Private wrong to the plaintiffs has not been shown. There is, therefore, no basis for the injunction order and it must be reversed. Reaching that conclusion on the grounds stated above, all the questions certified save only No. 2 become academic in the decision of the appeal.

The orders should be reversed, with costs in all courts, and certified question No. 2 answered in the negative. All other questions certified unanswered as not necessary to the decision.

POUND, Ch. J., CRANE, LEHMAN, O'BRIEN and HUBBS, JJ., concur.

Orders reversed, etc.